It WOODARD, Judge.
Mr. Don Metoyer sued Mr. Doffie Benjamin and his insurer, Allstate Insurance Company (Allstate), for personal injuries that he sustained when Mr. Benjamin’s truck struck his wrecker’s left, front fender. Mr. Benjamin and his wife, Ms. Delores Benjamin, filed claims for their personal injuries against Mr. Metoyer and his insurer, Colonia Insurance Company (Co-lonia). Ms. Benjamin also filed a claim against Místate. The trial court held Mr. Benjamin solely responsible for the accident, denied his claims and awarded Mr. Metoyer $6,000.00 in general damages and $843.93 in medical expenses and Ms. Benjamin $5,500.00 in general damages and $1,263.00 in medical expenses. Mr. and Ms. Benjamin appeal. Mr. Benjamin alleges that the trial court erred in finding Mr. Benjamin solely responsible for the accident, that his counsel should have been allowed to use the police reports to impeach witnesses under cross-examination and that he should have been awarded damages. Ms. Benjamin seeks an increase in her damage awards. We find no manifest or legal error in the trial court’s decisions and affirm.
*825 ‡
On May 2, 1997, the Natchitoches Police Department called Archie’s Wrecker Service to remove a disabled vehicle that had been involved in an accident at the intersection of La. 6 and La. IB in Natchitoch-es, Louisiana. The wrecker service dispatched Mr. Metoyer to the scene with a wrecker. While maneuvering to remove the disabled car, Mr. Benjamin struck Mr. Metoyer’s wrecker in its front left portion causing personal injuries to both men and Ms. Benjamin.
The intersection at La. 6 and Louisiana La. IB consists of two four-lane highways with two lanes running in each direction. La. 6 runs in an east-west direction and La. IB runs in a north-south direction. A traffic light controls the intersection. The disabled vehicle Mr- Metoyer had been summoned to remove was located on the far left side of the road on La. 6 pointed in an easterly direction.
Mr. Metoyer approached the intersection in question from College Avenue with his emergency lights flashing. He drove through the intersection and parked the wrecker on the far right shoulder of La. IB ahead of the disabled vehicle. Upon arriving at the scene, he found two police vehicles, operating their emergency lights. 1 ¡¿Mr. Metoyer spoke briefly with the investigating officers. Then, he swept the glass debris off the road to prevent damaging the wrecker’s tires, and went back in the wrecker to tow the damaged car. He pulled the wrecker slightly forward at an angle, placed it in reverse, and was looking back at the car he was to tow, but not yet moving, when Mr. Benjamin’s truck hit the wrecker near the left front fender. As a result of the accident, Mr. Metoyer sustained cervical and lumbar muscle sprains, which required conservative medical treatment.
According to Mr. Benjamin, he had proceeded through the intersection on a green light at a normal speed, with a car proceeding him and one following him. He testified that he saw the wrecker and the police cars, but did not recall seeing any emergency lights flashing. He alleged he was traveling south on La. IB in the left lane when Mr. Metoyer pulled the wrecker forward into the left lane and hit his truck’s right side.
There were two eye witnesses to the accident, Detective Roger Henson and Mr. James Pleasant. The accident occurred while Detective Henson was investigating the first accident and stopping traffic in the east bound lane of La. 6 to allow Mr. Metoyer to back the wrecker up to the disabled car. He saw the wrecker in the right-hand lane of La. IB, not the left lane as Mr. Benjamin testified. Further, he testified that at the time of the Metoyer/Benjamin accident, Mr. Metoyer was stopped or only moving slightly.
Mr. Pleasant viewed the accident standing on the side of the road behind his wife’s car on La. 6. According to Mr. Pleasant, Mr. Benjamin’s truck passed through the intersection at 45 to 50 miles per hour, faked to reduce speed, and “sideswiped” the wrecker’s left side. He stated that at the time of the accident, he saw Mr. Benjamin looking at the damaged car and the wrecker was not moving at all or had just started to move a little bit.
Sergeant Carey Hargrove investigated the Metoyer/Benjamin accident. He testified that when he arrived at the scene, the emergency lights on the two police cars and the wrecker were operating. He opined that the accident happened in the mid-point of the right-hand lane of the La. IB. He testified that he had initially cited Mr. Metoyer with a violation for failing to yield to Mr. Benjamin’s car on his accident report because Mr. Metoyer had the green *826 light at the intersection. However, he later supplemented his report amending the violations section, because the wrecker was ^functioning as an emergency vehicle and under circumstances in which Mr. Benjamin had the duty to yield.
Mr. Metoyer filed a petition for damages against Mr. Benjamin and Allstate. Mr. Benjamin answered and filed a reconven-tional demand, naming Mr. Metoyer and his insurer, Colonia, as Defendants. Ms. Benjamin filed a third-party Plaintiffs action against Mr. Metoyer. Ms. Benjamin later added Allstate as a Defendant. After a hearing on February 22, 2000, the trial court awarded Mr. Metoyer $6,000.00 in general damages and $843.93 in medical expenses on March 21, 2000. On April 10, 2000, the trial court awarded Ms. Benjamin $5,500.00 in general damages and $1,263.00 in medical expenses. The trial court signed a final judgment on May 22, 2000. Mr. and Ms. Benjamin devolutively appeal.
Mr. and Ms. Benjamin allege that the trial court erred in assigning all fault for the accident to Mr. Benjamin, that his counsel should have been allowed to use the police reports to impeach witnesses under cross-examination and that he should have been awarded damages. Ms. Benjamin seeks an increase in her damage awards.
s}: í[í ;*5 ij:
The Trial Court’s Findings
Mr. Benjamin alleges two errors. Essentially, they both claim that the trial court erred when it found him to be solely at fault in causing the accident.
In Jim Walter Homes, Inc. v. Jessen,[1] we stated that:
Our Supreme Court has recently reiterated the standard of review on appeal in Syrie v. Schilhab, 96-1027, p. 4 (La.5/20/97); 693 So.2d 1173, 1176 (citations omitted) as follows:
A court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong”. This court has announced a two-part test for the reversal of the factfinder’s determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder’s conclusion was a | ¿reasonable one.... The reviewing court must always keep in mind that if the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.
In its reasons for judgment the trial court stated, in part:
This suit involves a collision between two vehicles at or near the intersection of La. Hwy. 6 and the Hwy. 1 Bypass, on May 2,1997.
An accident had occurred a the intersection and the Natchitoches Police Department had called Archie’s Wrecker Service to the scene for assistance. The wrecker was driven by Don Metoyer. While át the scene of the first accident, there was a collision between the wrecker and the pickup truck be [sic] driven *827 by Doffie Benjamin, and in which his wife, Delores Benjamin was a passenger. The resulting damages to the parties are the subject of this suit.
Also named as defendants herein are Allstate Insurance Company, the automobile liability insurer of Mr. Benjamin, and Colonia Insurance Company, the automobile liability insurer of Mr. Metoyer.
At this intersection La. 6 runs in a generally east-west direction, and the La. 1 Bypass runs in a generally north-south direction. Each is four lanes, with two lanes in each direction.
As a result of the first collision there was a disabled automobile in the far left turn lane of east bound La. 6 approaching La. 1. This was the vehicle Mr. Metoyer had been asked to remove.
Mr. Metoyer approached the intersection on La. 6 from the east, and turned south on La. 1, passing through the intersection, and stopping on the shoulder and/or in the right hand lane of La. 1, just south of the intersection.
Mr. Benjamin’s vehicle was traveling southerly on La. 1, passed through the intersection, and his truck and the wrecker collided just outside the intersection.
Mr. Metoyer testified that there were two police vehicles at the scene with their overhead emergency lights on when he arrived. He said his wrecker had its overhead lights operating. He began to maneuver to back up from La. 1 to the disabled vehicle on La. 6. He had pulled forward angling toward the left lane of La. 1 South, and was in the process of moving backward, but had not yet started moving when the collision occurred, he said. He was not using his side or rearview mirrors, but was looking out the back window.
| .¡Roger Henson, who was at the time with the Natchitoches Police Department, testified that he was holding up eastbound traffic on La. 6 so Mr. Metoyer could back up to the disabled vehicle. He said that he thought Mr. Metoyer’s vehicle was stopped when the collision occurred, but could have been moving very slowly.
Detective Henson said that the emergency rotator lights of Mr. Metoyer and the two police cars were operating when Mr. Metoyer arrived at he intersection, - and were on the at the time of the collision.
Natchitoches Police Department officer Robert Pagel testified that he was at the scene writing citations for the first collision. He confirmed detective Henson’s testimony as to the rotator lights being in operation on all three vehicles. Lieutenant Carey Hargrove investigated the accident at issue for the Natchitoch-es Police Department. He testified that the debris from the collision was located in the right lane of La. 1 south, and accordingly opined that [sic] was where the collision occurred.
James Pleasant testified by video deposition. Mr. Pleasant’s wife was involved in the first collision and her vehicle was parked on the east side of the intersection, on the right shoulder of La. 6 east. Mr. Pleasant was standing behind her vehicle, watching the wrecker and the intersection.
Mr. Pleasant said the emergency rota-tor lights of the two police ears and the wrecker were on. The wrecker was on the shoulder or just a few feet into the right lane of La. 1.
Mr. Pleasant saw Mr. Benjamin drive his vehicle through the intersection. Mr. Benjamin did not reduce his speed. Mr. Pleasant saw Mr. Benjamin looking toward the disabled car on the west side *828 of the intersection as he passed by. Then Mr. Benjamin’s vehicle and the wrecker collided. Mr. Pleasant said that the wrecker was either stopped or just starting to move.
[[Image here]]
Mr. Benjamin testified that as his vehicle approached the intersection on La. 1 from the North, there was a car in front of him and a car behind him. There was a green traffic light in his favor at the intersection.
He was in the left lane. He said he did not see any emergency lights, but if the police said they were on, he would not disagree.
Mr. Benjamin said he saw the wrecker move forward, then started turning and backing, which caused the wrecker to go over into the left lane, and they collided.
[[Image here]]
The court finds that the emergency rotator lights of two police cars and the wrecker were operating as the Benjamin vehicle approached the intersection.
The court finds that the Metoyer wrecker was an authorized emergency vehicle, responding to an emergency call, pursuant to La. Revised Statutes 32:24. As such, the wrecker has the authority to “disregard regulations governing the direction of movement or turning in specified direction.” (Subsection B) (4).
It is clear that this accident occurred because Mr. Benjamin was inattentive as to the traffic situation in front of his vehicle because he was watching the scene of the first accident as. he passed through the intersection. When he did look ahead and saw the wrecker, it was too late to do anything and the collision occurred. This finding is supported not only by the credibility that the court finds in the testimony of the officers, Mr. Metoyer and Mr. Pleasant, by also from the fact that Mr. Benjamin testified that he never noticed or saw any emergency lights on the vehicles.
As the court finds that the sole and proximate cause of this accident was Mr. Benjamin, there is no need to consider the damages sustained by Mr. and Mrs. Benjamin. Accordingly, the court will proceed to a determination of Mr. Me-toyer’s damages.
We conclude that these findings of fact are reasonable. Hence, they are not manifestly erroneous or clearly wrong. Now, we turn to the legal issue in the court’s findings, concerning the wrecker’s operations. La.R.S. 32:24 establishes Mr. Metoyer’s duties as the driver of an emergency wrecker responding to an emergency call. It states:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
17(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall *829 apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
(Emphasis added.)
It is clear under the law of this circuit and the statute, that a wrecker with its emergency lights flashing while responding to a traffic accident is considered an emergency vehicle, and may not be held liable without finding that it exhibited a reckless disregard for the safety of others.[2] In the instant case, Mr. Metoyer attempted to maneuver his wrecker into position to transport a disabled vehicle, while under Detective Henson’s supervision. Detective Henson had stopped traffic in the east bound lane of La. 6 in order to permit Mr. Metoyer to secure the disabled vehicle. We find no evidence in the record indicating that Mr. Metoyer’s wrecker operation exhibited a reckless disregard for the safety of others. On the contrary, his actions were reasonable. Because this was an accident scene and the police and wrecker vehicles operated their emergency lights, Mr. Benjamin had the duty to proceed through the intersection with extreme caution, even with a green light. That, he did not do.
Again, we find no legal error in the trial court’s statutory and legal findings. Accordingly, we affirm.
| ^Impeachment
Mr. Benjamin urges that the trial court erred in not allowing the use of the police reports to impeach witnesses under cross-examination, impermissibly curtailing cross-examination. Pursuant to the UNIFORM Rules—courts of Appeal—Rule 2-12.4 all specifications or assignments of error must be briefed. Since this assignment of error is not separately briefed, we find it to be abandoned.
Mr. Benjamin’s Personal Injuries
In this specification of error, Mr. Benjamin alleges that the trial court erred in failing to award him personal, medical, and property damages. After having upheld the trial court’s factual and legal findings, we find no merit in this argument.
Ms. Delores Benjamin’s Personal Injuries
Ms. Benjamin filed a letter brief in support of her claim for increased damages, resulting from the injuries which she sustained in the accident. The trial court awarded her $6,763.00 from her husband’s insurer, Allstate. She sustained a cervical strain, mild epigastric tenderness, and decreased motor strength in her right hand. She also suffered from tension headaches and bruising of her left hand.
We must decide whether the trial court abused its “great” and “vast” discretion in its awards.[3] Finding that this award is not “beyond that which a reasonable trier of fact could assess for the effects of the particular injury to [this] particular plaintiff,”[4] we affirm.
*830 CONCLUSION
. We affirm the trial court’s legal and factual findings, that Mr. Benjamin was solely responsible for this accident. Further, we affirm the trial court’s damage awards to Ms. Delores Benjamin, as the injured, guest passenger and cast Mr. Benjamin with all costs.
AFFIRMED.

. 98-1965, pp. 4-5 (La.App. 3 Cir. 3/31/99); 732 So.2d 669, 702.

. Prather v. Gautreaux, 297 So.2d 439(La.App. 3 Cir.1974); Mott v. Babin Motors, Inc., 451 So.2d 632 (La.App. 3 Cir.1984).

. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).

. Id. at 1261.