845 So.2d 1039 (2003)
LOUISIANA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION 1993, INC.
v.
FAIR GROUNDS CORPORATION, First Statewide Racing Company, Inc., d/b/a Evangeline Downs, Louisiana Downs, Inc., Delta Downs Racing Association, Inc. and Louisiana Department of Public Safety and Corrections.
No. 2002-C-1928.
Supreme Court of Louisiana.
April 9, 2003.
Rehearing Denied June 6, 2003.
*1040 C. James Gelpi, New Orleans, Stephen L. Lee, Harry T. Lemmon, Steven C. Thompson, for Applicant.
Juston M. O'Brien, Michael H. Rubin, McGlinchey Stafford; Charles W. Salley, Lunn, Irion, Johnson, Salley & Carlisle; James P. Dore, Amy Louise deGeneres Berret, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarmen; Henry C. Perret, Jr., John W. Kolwe, Boyd A. Bryan, Perret, Doise; Richard D. Moreno, Wright & Moreno; Richard P. Ieyoub, Attorney General, L. Rand Dennis, Asst. Attorney General, David B. Garraway, Crews R. LeBlanc, Alan J. Berteau, Baton Rouge, for Respondent.
TRAYLOR, Justice.
We granted the writ application to determine whether the court of appeal erred in reversing the trial court's grant of partial summary judgment in favor of the plaintiff. For the reasons which follow, we reverse the court of appeal, and reinstate the judgment of the trial court.

FACTS and PROCEDURAL HISTORY
In 1991, the legislature approved the placing of video poker devices at horse racing tracks and off-track betting facilities by enacting the Video Draw Poker Devices Control Law, Louisiana Revised Statutes 27:301-24.[1] In 1994, the Louisiana Horsemen's Benevolent and Protective Association 1993, Inc. (the Association), an authorized representative of the owners, trainers, and breeders of racehorses on any matter of interest and concern to them, filed a petition for damages against the Fair Grounds Corporation; First Statewide Racing Company, Inc., d/b/a as Evangeline Downs, Inc.; Louisiana Downs, Inc.; and Delta Downs Racing Association, Inc. (the Tracks).[2] The petition alleged that the Tracks were incorrectly calculating and distributing income to the Association from the video poker machines located on the Tracks' premises, contrary to the provisions of La. R.S. 27:318(A)(1).
The Tracks subsequently filed motions for summary judgment, arguing that the deductions to the amounts distributed to the Association were authorized by the video gaming statutes and regulations promulgated by the Video Gaming Division of the Gaming Enforcement Division of the State Police, a component of the Louisiana Department of Public Safety and Corrections (the Division), which is also named as a defendant in the matter. The Association filed a cross motion for summary judgment on the issue of liability only, arguing that the law specified only three deductions to the payable revenue and that deductions for franchise and contractual leasing fees were not authorized.
The trial court granted the Association's motion for partial summary judgment and denied the Tracks' motions for summary judgment, designating the judgment as final *1041 pursuant to La. C.C.P. art. 1915(B)(1). The court of appeal reversed.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Ross v. Conoco, Inc., XXXX-XXXX (La.10/15/02); 828 So.2d 546. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This decision does not turn on a matter of material fact, but, instead, depends upon the meaning given to the wording of a statute.
"[T]he task of statutory construction begins with an examination of the language of the statute itself ... When the law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." State v. Barbier, 98-2923 (La.9/8/99); 743 So.2d 1236, 1238.
The statute at issue here, La. R.S. 27:318(A)(1), reads:
A. (1) When the owner of the licensed establishment is not the licensed device owner of the devices placed in or on his premises,[3] one-half of the monthly net device revenues received by the establishment owner, after deduction of one-twelfth of the estimated total of annual establishment fees plus one hundred dollars per device per month and any fee or tax levied by the local governing authority, shall be used to supplement purses for horsemen as provided in subsection B of this Section and shall be added to those presently available under R.S. 4:183. Such monies shall be made available for use as purses monthly, prior to the twentieth day of the month following the month in which they are earned.
The term "net device revenue" used in the statute is defined by the legislature as "the gross revenue of a device less the value of prizes paid as shown on the meters of the device." La. R.S. 27:301(B)(10). The phrase "received by the establishment owner," however, is not defined, and is the point of contention here.
The defendants argue that because the money inserted into the video poker devices is removed by the device owners and not returned to the tracks until after the franchise fee and contractual fees are taken out, the "net device revenues received by" the tracks does not include those fees. The court of appeal agreed, observing that although the "rules and regulations" promulgated by the Division for the counting and collecting of net device revenues[4] were not binding, they were persuasive, and that those rules and regulations required the two additional deductions to be made before calculating the amount due the Association. In determining that the Division had correctly interpreted the statute, the court of appeal also noted that the usual and accepted meaning of "received" is to "have possession of the object received." Louisiana Horsemen's Benevolent and Protective Assoc. 1993, Inc. v. Fair Grounds Corp., 01-1002, slip op. at 8, 826 So.2d 1202 (La.App. 1st Cir.6/21/02).
When two or more interpretations may be given a law, though, the interpretation *1042 which is reasonable and practical is preferred to that which makes part of the law ridiculous or meaningless. Langley v. Petro Star Corp. of La., 01-0198 (La.6/29/01); 792 So.2d 721. Further, laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13.
The paragraph following the paragraph at issue, La. R.S. 27:318(2), controls the division of funds when the establishment owner is also the owner of a video poker device. Paragraph 2 reads:
(2) When the owner of the licensed establishment is the licensed device owner of the devices placed in or on his premises, one-half of the monthly net device revenues received by the establishment owner in excess of five hundred dollars shall be used to supplement purses for horsemen as provided in Subsection B of this Section and shall be added to those presently available under R.S. 4:183. Such monies shall be made available for use as purses monthly, prior to the twentieth day of the month following the month in which they are earned.
Paragraph 2 clearly states, without any ambiguity, that the only allowance granted to establishments which own their own video poker devices is a single five-hundred dollar deduction.[5] One half of the amount remaining after the five-hundred dollar deduction is taken goes to the Association for purse supplements. If, therefore, an establishment owner is also the device owner, the establishment owes very nearly fifty percent of net device revenues to the Association.
Because the two paragraphs were enacted as part of the same statute and at the same time, it is logical to assume that the legislature intended that the amount of a purse supplement would be more or less the same whether the Tracks owned the video poker devices or rented them. The interpretation given Paragraph 1 by the court of appeal, though, greatly reduces the amount of the purse supplement from near fifty percent of net device revenues to an amount as low as five percent of net device revenues.
Another accepted meaning of "received," but one which does not lead to an absurd result, is "to take in or act as a receptacle for." Webster's Third New International Dictionary, 1979. This definition, when used in both paragraphs of La. R.S. 27:318(A), obtains the consistent result that the monies earned for purse supplements is approximately the same whether the video poker devices are owned by the Tracks or rented from third parties. This definition also ensures that the twenty-two and one-half percent franchise fee, which by law is apportioned to the video device owner,[6] is actually paid by the device owner rather than being shifted to the Association and Tracks for payment.
We find that prior to the calculation of the supplemental purse amount, La. R.S. 27:318(A)(1) specifies that only one-twelfth of the estimated establishment fee, one hundred dollars per video poker device, and any local fees or taxes, may be deducted from the net device revenue.

DECREE
For the foregoing reasons, the ruling of the court of appeal is reversed, the judgment of the trial court is reinstated, and the matter is remanded to the trial court *1043 for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
KIMBALL and VICTORY, JJ., concur in the result.
NOTES
[1] Acts 1991, No. 1062 originally designated the law as La. R.S. 33:4861 et seq. Acts 1996, 1st Ex.Sess., No. 7 provided for the current designation.
[2] The court of appeal dismissed the appeal to that court of Delta Downs Racing Association Capital, Inc., on August 17, 2001. Delta Downs is not, therefore, before this court. In addition, on March 18, 2003, this court approved the dismissal with prejudice of the plaintiff's claims against Old Evangeline Downs, L.L.C., successor by merger to First Statewide Racing Co., Inc., d/b/a Evangeline Downs, and the First Statewide Racing Co., Inc., d/b/a Evangeline Downs.
[3] None of the tracks own the video poker devices.
[4] The Division is authorized to promulgate such rules and regulations by various statutes contained in the Video Draw Poker Devices Control Law.
[5] We note that despite the plain language of the statute, the Division has incorrectly allowed the 22 ½% franchise fee and $500.00 per video poker device to be deducted from net device revenue prior to calculation of the amount of the purse supplement.
[6] La. R.S. 27:311(D)(2).