# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 19-757

KAITLYN LEBOUEF AGUILLARD

VERSUS

CALEB K. AGUILLARD

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 18-C-5082-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**********

## JONATHAN W. PERRY
## JUDGE

**********

Court composed of John E. Conery, D. Kent Savoie, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Caleb K. Aguillard**
**In Proper Person**
**141 South Sixth Street**
**Eunice, Louisiana 70535**
**(337) 457-9331**
**DEFENDANT/APPELLANT**


**Jack Derrick Miller**
**Post Office Drawer 1650**
**Crowley, Louisiana 70526**
**(337) 788-0768**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Caleb K. Aguillard**


**Dyan Schnaars**
**3639 Ambassador Caffery Parkway**
**The Petroleum Tower, Suite 333**
**Lafayette, Louisiana 70503**
**(337) 534-4326**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Kaitlyn LeBouef**


**Geralyn Siefker**
**210 West Main Street**
**Lafayette, Louisiana 70501**
**(337) 210-5986**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Kaitlyn LeBouef**

**PERRY, Judge.**

This case arises from the Domestic Abuse Assistance Act found in La.R.S. 46:2131 to La.R.S. 46:2143. Caleb K. Aguillard appeals a judgment of the trial court granting a protective order to his former spouse, Kaitlyn LeBouef. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

Kaitlyn LeBouef (LeBouef)[1] and Caleb K. Aguillard (Aguillard)[2] were married in February 2017 and had one child, J.F.A.,[3] born on September 26, 2017. On November 16, 2018, LeBouef filed for divorce under La.Civ.Code art. 102.[4] In her petition, LeBouef requested the parties be awarded joint custody of the child with her being designated as the domiciliary parent and with Aguillard having reasonable supervised visitation pending completion of a hair-follicle drug screening and evaluation for substance abuse. LeBouef also sought child support, exclusive use of the family home, and other incidental requests.

Aguillard filed an answer and reconventional demand on December 4, 2018, requesting the parties be awarded joint custody of the child with him having frequent visitation. In addition to other incidental requests, Aguillard sought exclusive use of the family home; interim spousal support; issuance of a temporary restraining order (TRO) prohibiting LeBouef from alienating any community assets, borrowing against or changing beneficiaries of life insurance policies, and cancelling existing health, hospitalization, and automobile insurance policies; and issuance of a TRO

---

[1] Formerly Kaitlyn LeBouef Aguillard.

[2] Aguillard, an attorney, has represented himself throughout these proceedings.

[3] Initials are used to ensure the confidentiality of minors. Uniform Rules—Courts of Appeal, Rule 5–2.

[4] The parties are now divorced by judgment dated November 15, 2019.

against LeBouef pursuant to La.R.S. 9:372.1, prohibiting harassment through direct or indirect contact with Aguillard's family or former family members.

On December 17, 2018, the parties appeared before a hearing officer who recommended, in pertinent part: the parties have joint custody of the child with LeBouef being the domiciliary parent and with Aguillard having supervised visitation pending a hair-follicle drug screening; LeBouef have exclusive use of the family home; Aguillard pay $280 per month in child support; the parties attend parenting classes; and reciprocal TROs to stop harassment. Both parties objected to the hearing officer's recommendations.

On December 26, 2018, Aguillard filed a Rule for Contempt against LeBouef. Aguillard alleged LeBouef refused to allow him to have unsupervised visitation with J.F.A. after Aguillard's hair-follicle drug screening was negative for narcotics. According to the trial court's minutes and an Order on Rule signed on January 29, 2019, a pre-trial conference was held on Aguillard's Rule for Contempt on January 11, 2019. Trial on the issues of interim spousal support, child support, and child custody was set for April 17, 2019. The trial court's order further specified Aguillard remained subject to random hair-follicle drug screenings to be set at the court's discretion, and the reciprocal TROs remained in effect.

Aguillard filed a Petition to Enforce Settlement Agreement and Compromise on February 11, 2019. He sought to enforce certain terms concerning custody, visitation, interim spousal support, drug screenings, and child support, to which he alleged LeBouef had agreed.

The record reflects the parties signed a Consent Judgment on March 1, 2019, settling the issues concerning the use of the family home, child support, interim spousal support, and separation of community property. On March 6, 2019, the parties also entered into a Stipulated Joint Custody Implementation Plan and a

2

Community Property Partition Agreement, and a Judgment of Partition was signed by the trial court.

On March 22, 2019, Aguillard filed a Motion for Injunctive Relief and Rule for Contempt pursuant to La.Code Civ.P. arts. 3601–3613. Aguillard alleged LeBouef abused A.E.A. and N.K.A., his children from a prior marriage, while he was away from the family home undergoing inpatient rehabilitation from August 4, 2018 to November 12, 2018. The parties appeared before a hearing officer on May 2, 2019. The hearing officer recommended denial of Aguillard's motion. Aguillard filed an objection. Aguillard also requested a *Watermeier* hearing.[5]

After the hearing officer conference on May 2, 2019, LeBouef filed a Petition for Protection from Abuse pursuant to La.R.S. 46:2131–2143, charging Aguillard with domestic abuse. LeBouef alleged physical abuse, sexual abuse, stalking on social media, and verbal intimidations, which included Aguillard threatening he would accuse LeBouef of physically abusing A.E.A. and N.K.A. LeBouef was granted an ex parte TRO and the matter was scheduled for conference before a hearing officer. *See* La.R.S. 46:2135(A) and (I). After Aguillard was ordered to show cause why the TRO should not be converted to a protective order, he obtained an order to forego a hearing before a hearing officer.

On May 20, 2019, Aguillard filed a First Amending Petition and Supplemental Petition for Divorce Pursuant to La.Civ.Code art. 103(4),[6] or Alternatively Pursuant

---

[5] "A '*Watermier* hearing' is a hearing in chambers, outside of the presence of the parties, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody." *Patterson v. Charles*, 19-333, p. 20 (La.App. 4 Cir. 9/11/19), 282 So.3d 1075, 1089 (quoting *S.L.B. v. C.E.B.*, 17-978, 17-979, 17-980, p. 13, n. 12 (La.App. 4 Cir. 7/27/18), 252 So.3d 950, 960, *writ denied*, 18-1442 (La. 11/20/18), 256 So.3d 992). According to the trial court's minutes, a *Watermeier* hearing was held on May 17, 2019. The trial court determined A.E.A. and N.K.A. were competent to testify in these proceedings.

[6] Under La.Civ.Code art. 103(4), divorce shall be granted upon proof that: "During the marriage, the other spouse physically or sexually abused the spouse seeking divorce or a child of one of the spouses, regardless of whether the other spouse was prosecuted for the act of abuse."

3

to La.Civ.Code art. 103(5).[7]    Aguillard's petition alleged that following a

*Watermeier* hearing, which was held on May 17, 2019, the trial court granted his

Motion for Injunctive Relief pursuant to La.Code Civ.P. arts. 3601–3613.  Thus,

Aguillard sought a judgment of divorce on the basis the trial court found LeBouef

had abused A.E.A. and N.K.A.

Speaking to Aguillard's petition for divorce, on May 28, 2019, the trial court

filed into the record a transcript of its oral ruling on May 17, 2019, Written Reasons

for Judgment, and a concomitant Order.  The trial court's Written Reasons for

Judgment express, in relevant part:

> [T]he Court did not comment or make any findings as to the allegations
> of abuse of the children as presented in evidence and the Court's reason
> for doing so was purposeful.  Specifically, the Court has ruled, and does
> reiterate and re-enforce its holding, on the Code of Civil Procedure
> Article 3601 Injunction that was issued herein restraining and enjoining
> and prohibiting [LeBouef] from approaching the minor children of
> [Aguillard] or contacting them either directly or indirectly and from
> further publishing any photographs of them on social media for public
> viewing based upon the fact that [LeBouef] is not the parent of these
> two minor children and has no legal rights when it comes to custody,
> visitation, or contact with the children and it was the specific request,
> intent and plea of the father that his children have no contact with
> [LeBouef].  The Court is of the opinion that there was sufficient
> grounds in which to rule on the injunction without the necessity of
> making factual findings on the allegations of abuse.  Furthermore, the
> Court is not satisfied that the testimony of abuse made by the two
> children was sufficient for the Court to grant the injunction on the
> grounds of abuse and those grounds only.  The Court is of the opinion
> that in order to make a finding of abuse of the children, additional
> corroborating evidence would have to be presented.  Furthermore, the
> Court notes that in making his request for no contact between
> [LeBouef] and the two minor children of [Aguillard], on several
> occasions, testified that his concern with [LeBouef] disciplining his
> children while they were in a relationship had more to do with the
> consequences or issues that may arise from said discipline being raised
> by the natural mother of the two minor children and it was not until
> after the separation of the parties that defendant became concerned with
> the method or extent of the discipline of his children by their
> step-mother.  Furthermore, the Court notes that there is a fine line
> between disciplining a child and abusing a child and as the Court stated

---

[7] Under La.Civ.Code art. 103(5), divorce shall be granted:  "After a contradictory hearing
or consent decree, a protective order or an injunction was issued during the marriage against the
other spouse to protect the spouse seeking the divorce or a child of one of the spouses from abuse."

4

above, to make a finding of abuse additional evidence would be required.

Following the issuance of the trial court's reasons, Aguillard dismissed his petition for divorce on the alternative grounds of La.Civ.Code art. 103(5).

Trial on LeBouef's Petition for Protection from Abuse was held on June 28, 2019. During trial, LeBouef presented testimony from her father, Bernard LeBouef; two officers from the Eunice Police Department, Lieutenant Michael Dunn and Officer Jack Ardoin; and licensed social worker, Jennifer Glasscock.

Lieutenant Michael Dunn worked with Aguillard at the Eunice Police Department. Lieutenant Dunn testified he never personally witnessed Aguillard threaten LeBouef, nor did he recall ever being contacted by LeBouef to report Aguillard being violent or threatening violence.

On cross-examination, Lieutenant Dunn was asked whether he trusted Aguillard when they worked together on a daily basis to carry a loaded firearm. Lieutenant Dunn answered, "Up to a certain point[.]"

On re-direct examination, Lieutenant Dunn clarified his answer, testifying he did not fully trust Aguillard because of a theft that occurred and his opinion Aguillard was intoxicated at work. Lieutenant Dunn approximated it was May 2018 when Aguillard allegedly stole prescription medication from his residence. He testified he heard Aguillard was told to voluntarily resign from the Eunice Police Department in lieu of criminal charges.

Officer Jack Ardoin testified he also worked with Aguillard at the Eunice Police Department. He recalled going to LeBouef's residence in November 2018 and advising LeBouef to contact the Eunice City Marshal's Office if she became concerned with Aguillard's behavior upon his return home from inpatient rehab in Mississippi. Officer Ardoin recalled LeBouef being fearful. He was also called to

LeBouef's residence only a week earlier, after LeBouef's father reported a suspicious package was found in her mailbox.

On cross-examination, Officer Ardoin acknowledged there was no evidence linking Aguillard to the suspicious package. He also testified he never witnessed Aguillard commit domestic violence, and he acknowledged Aguillard advocated for victims of domestic violence in his job as a police officer. Officer Ardoin and Aguillard attended the police academy together, and Aguillard held the position of class president.

On re-direct examination, Officer Ardoin acknowledged there being a movement to impeach Aguillard from the position of class president. However, he did not recall on what grounds individuals sought to remove Aguillard.

Jennifer Glasscock was accepted by the trial court as a licensed clinical social worker with the ability for treatment of domestic violence. LeBouef began seeing her on August 2, 2018, for marriage counseling. Ms. Glasscock testified LeBouef told her Aguillard had choked her, and she was fearful of him. Ms. Glasscock diagnosed LeBouef with acute stress disorder, exhibiting symptoms of overwhelming fear, anxiousness, depression, and fear of harm, both physical and psychological. She opined LeBouef is a victim of domestic violence and explained the abuse affected LeBouef's sense of worth, giving her a sense of powerlessness, helplessness, and an overwhelming fear. She observed LeBouef had difficulty falling asleep and staying asleep, decreased appetite, and a sense of guilt which she testified was a result of gaslighting. Ms. Glasscock defined gaslighting as:

> A psychological form of abuse in which the perpetrator places seeds of doubt and insecurity in the victim and turning -- turning reality into -- into a falsehood, redirecting with lies and manipulation, intimidation through these methods and leaving the victim unsure, uncertain, insecure about what is -- what is real, what is true.

6

According to Ms. Glasscock, her treatment has focused on stabilizing LeBouef's sense of safety and helping her with managing panic attacks.

On cross-examination, Ms. Glasscock testified it is her job to treat claims of abuse; it is not her job to substantiate claims of abuse. Ms. Glasscock acknowledged LeBouef has anger issues, but also noted LeBouef demonstrates a self-awareness thereof. Also, Ms. Glasscock testified she found LeBouef's anger to be a natural human response to the sense of powerlessness and to being overpowered.

LeBouef's father, Bernard, testified that LeBouef told him of three incidents of Aguillard's abuse. The first being when Aguillard choked LeBouef and the second being when Aguillard hit LeBouef and left a bruise on her leg. He stated Aguillard called him the morning after hitting LeBouef, crying, claiming self-defense, and professing remorse. Mr. Bernard testified the third instance of abuse LeBouef reported to him was the first time Aguillard sexually assaulted her.

Under cross-examination, Aguillard invited Mr. Bernard to elaborate on their conversation the morning after Aguillard hit LeBouef's leg. Aguillard asked, "That was in the last week of July of last year, wasn't it? I called you in the morning crying and I told you the night before she had hit me in the face[,] and I swatted her on the leg. I told you about that, right?" Mr. Bernard replied, "After she told me you had done that."

During her testimony, LeBouef recounted several incidents of abuse she alleged happened during her twenty-one-month marriage to Aguillard.[8] The trial court also accepted excerpts from LeBouef's handwritten journal, wherein she

---

[8] Aguillard entered rehab on August 4, 2018, where he remained until after LeBouef filed for divorce on November 16, 2018. Thus, we note Aguillard and LeBouef lived together as husband and wife for approximately eighteen months.

7

memorialized her relationship with Aguillard.[9]  According to LeBouef:  on March 14, 2017, within a month of their marriage, Aguillard grabbed her by the throat, held her against a wall, and screamed in her face; on November 13, 2017, before she was fully recovered from child birth in September 2017, Aguillard forcibly restrained and sexually assaulted her; on November 23, 2017, Aguillard forced her to have sex; on May 2, 2018, Aguillard used his foot to kick LeBouef and their infant out of bed because he was wakened by the infant's cries to be fed; on June 24, 2018, Aguillard struck LeBouef's upper right arm with his fist while she held their sleeping infant; and on July 23, 2018, Aguillard struck LeBouef with his open palm on LeBouef's right thigh.  LeBouef explained, "I swatted his right arm like, 'Oh, boy, be quiet,' something along those lines and he lost it and as hard -- as he as hard as he could, he hit me with an open hand on my leg and knocked the wind out of me."  LeBouef testified Aguillard began blaming her, claiming she hit him in the face, claiming he had recorded her admitting she hit him first, and bragged that no one would believe her because he is friends with the cops and the city judge, and his father is an attorney.[10]  LeBouef photographed her leg and sent a copy of the picture to a friend.[11]

---

[9] The record contains Aguillard's Motion in Limine filed June 27, 2019, the day before trial, wherein he sought to quash the subpoenas of Lieutenant Dunn and Officer Ardoin, exclude evidence of other past bad acts, and to suppress LeBouef's use of a journal which Aguillard complained had not been produced in response to his discovery requests.  During trial, Aguillard also made a contemporaneous objection to LeBouef's use of her journal.

In response, LeBouef introduced into evidence her response, dated May 22, 2019, to Aguillard's discovery requests, dated May 7, 2019.  Therein, the journal was listed as an intended trial exhibit.

The trial court pronounced Aguillard could either proceed or move to continue the trial. Aguillard withdrew his objection to the use of the journal's excerpts and the trial resumed.  The trial court allowed into evidence, under seal, only pages of the journal related to LeBouef's testimony, redacted to obscure hearsay.

In his appellate brief, Aguillard alleges he withdrew his objection at trial under duress.  Our appreciation of the trial transcript leads to our finding Aguillard was not constrained when his objection to the journal's admission was withdrawn.

[10] LeBouef admitted deleting Aguillard's video and denied hitting Aguillard's face.

[11] The photograph was introduced into evidence.

Twelve days later, on August 4, 2018, LeBouef called Aguillard's parents to pick him up because, for the second time in a matter of months, he had been terminated from his job. Aguillard was brought to an inpatient rehabilitation center while his two children, A.E.A. and N.K.A., remained with LeBouef. LeBouef brought A.E.A. and N.K.A. to Aguillard's parents' home before she filed for divorce on November 16, 2018.

LeBouef testified Aguillard was often intimidating. He would regularly say, "I am the law," remind her of his statuses as an attorney and a police officer, and display his weapons, i.e., guns, knives, and swords, to frighten her. She recalled an argument when Aguillard pointed a loaded gun just above her head and laughed when she became silent. Aguillard also reportedly boasted it would be futile for LeBouef to report his bad behavior because he knew everyone, his family had clout in the community, and she would never be believed.

LeBouef felt she was being watched by Aguillard. She testified that during their marriage, Aguillard created fake social media accounts to follow both his ex-wife, with whom Aguillard had ongoing custody issues concerning A.E.A. and N.K.A., and his ex-wife's boyfriend, John Chatman. LeBouef suspected Aguillard was behind her recent receipt of multiple friend requests on social media. She also suspected Aguillard attempted to access her Apple account in late-May 2019. LeBouef received an email from Apple Support, notifying her of unusual activity on her Apple account. She had not released her Apple ID or password to anyone other than him. In January 2019, LeBouef saw Aguillard watching her while he drove slowly past her home. She stated she was fearful of Aguillard's behavior, to the point that she moved back into her parents' home with J.F.A.

Under cross-examination, LeBouef conceded there had been no physical abuse by Aguillard since their physical separation on August 4, 2018; however, she

9

maintained Aguillard stalked and harassed her since their separation. LeBouef denied being comfortable with Aguillard and repeatedly meeting him with no one else present when they met to exchange their child, J.F.A. She insisted someone else was always present or their encounter was in a public setting.

When questioned why she agreed to sign the Consent Judgment in March 2019, LeBouef testified she did so because Aguillard's drug screenings were clean and because her attorney advised "I was not going to be able to keep you from seeing your daughter, . . . unfortunately, it would take [J.F.A.] physically being harmed[.]" Next, questioning LeBouef's motive for filing a petition for protection in May 2019, Aguillard asked, "What happened in March [2019] that made your attitude toward me radically change?" LeBouef denied filing her petition for protection in retaliation, stating Aguillard began in January 2019 declaring his children had been abused by LeBouef while he was not living at home from August to November 2018. LeBouef also denied she was told by Ms. Glasscock to file her petition for protection. LeBouef's counsel objected when Aguillard asked, "It sounds like you filed a Petition for Protection from Abuse after therapy and what you say you remember and not because of anything that's being going on at the time?" The trial court announced:

> Here is what the Court takes from what's been said so far. What she said was she didn't realize the problem that she had until she went through therapy. The therapist helped her to realize what was going on in her life and it was at that point she decided to file. That's what the Court's finding is and I'll adopt that as my finding so far based upon the evidence that I've heard.

Finally, Aguillard addressed LeBouef's journal, primarily focusing on a discrepancy between LeBouef's petition for protection, which alleged Aguillard choked LeBouef in February 2017, and her journal, which alleged Aguillard choked LeBouef on March 14, 2017. Aguillard suggested LeBouef manufactured the

journal and changed the date of the incident after he pointed out he was physically incapable of mistreating LeBouef in this manner because he had open heart surgery on February 10, 2017. LeBouef explained she simply misstated the date because she did not have the journal with her when she wrote the allegations in her petition for protection. She insisted Aguillard, a month after surgery, was physically capable of normal activities.

In his defense, Aguillard presented testimony from his child, A.E.A.; his former mother-in-law, Shelly Lester; and his mother, Leslie Denise Smith Aguillard. During direct examination, A.E.A. denied ever seeing Aguillard hit, hurt, threaten, scream, or curse at LeBouef. On cross-examination, A.E.A. acknowledged Aguillard and LeBouef sometimes argued loudly and used "bad words."

Ms. Lester testified she spent time with LeBouef and her grandchildren, A.E.A. and N.K.A., in the summer of 2018. Ms. Lester claimed LeBouef confided she wanted another child but complained her relationship with Aguillard lacked sex. Ms. Lester also recounted LeBouef telling her of one fight with Aguillard, during which LeBouef punched Aguillard in his chest. Ms. Lester said LeBouef bragged Aguillard was not man enough to hit her. Referring to the incident in July 2018, Ms. Lester testified LeBouef said she slapped Aguillard before Aguillard slapped LeBouef.

During her testimony, Leslie Aguillard characterized LeBouef's temperament around Aguillard as controlling, and claimed Aguillard, A.E.A., and N.K.A., complained about LeBouef's temper many times. Leslie Aguillard claimed she had continuous contact with LeBouef and Aguillard throughout their marriage and denied there was ever any indication Aguillard abused LeBouef. She also denied ever seeing Aguillard hurt either A.E.A. or N.K.A.

Under cross-examination, Leslie Aguillard acknowledged she did not have a good relationship with LeBouef. In fact, Leslie Aguillard was not invited to her son's wedding and claimed she was not allowed to attend Aguillard's heart surgery. She admitted that during the first year of Aguillard's marriage to LeBouef, she did not speak to LeBouef and Aguillard, and she did not see A.E.A. and N.K.A.

During his testimony, Aguillard denied each of LeBouef's allegations of abuse, especially sexual abuse, claiming "we were not having sex." He described LeBouef's attitude with him, A.E.A., and N.K.A. as being "completely hostile." Aguillard reiterated his accusation concerning LeBouef's journal, testifying, "I started to pick apart in my brief the things that were said in the Petition. Now all of a sudden when I said I was physically incapable in February of having done this, after that, now the date changes."

Aguillard denied LeBouef's allegations of harassment. Aguillard admitted he created "an alternative persona profile" when he worked with the Eunice Police Department in the criminal investigation division, but he denied spying on LeBouef in this manner. According to Aguillard, he used a fake profile to collect evidence for a lawsuit against John Chatman, wherein Aguillard alleged he was being stalked, harassed, and defamed.[12]

Aguillard conceded "the one time I ever touched" LeBouef was on July 23, 2018. He claimed LeBouef hit his nose with the back of her hand so he slapped her leg.

Aguillard denied LeBouef's allegations of intimidation. He explained his use of the expression "I am the law" was a joke. He denied ever saying it to threaten or

---

[12] We take judicial notice of Aguillard's suit against John Chatman. *See Aguillard v. Chatman*, 17-408 (La.App. 3 Cir. 1/31/18), 239 So.3d 300.

intimidate LeBouef. Aguillard further attributed the quote to Sylvester Stallone's movie *Judge Dredd*.

Aguillard denied saying his father was acquainted with judges, his friends were cops, or that no one would believe LeBouef. He claimed to be more attentive to A.E.A. and N.K.A. than LeBouef, he denied having anger issues, and described himself as humble.

At the conclusion of the hearing on LeBouef's petition for protection, the trial court took the matter under advisement. A ruling thereon was issued at the conclusion of additional proceedings held on July 9, 2019,[13] wherein the trial court found LeBouef had proven domestic abuse and was entitled to a protective order against Aguillard. In oral reasons, the trial court expounded, in relevant part:

> I am concerned on the issue of abuse for the issuance of a protective order. I find that there's a lot of animosity and there appears to be an element of the parties wanting revenge against the other for what happened during the time that they were together, particularly from the point towards the latter part of 2018 up until the time of November of 2018 and thereafter. I don't find any instances of abuse since November of 2018. I know Mr. Aguillard says that the abuse, in order for the issuance of the protective order, has to be immediate and likely to happen but that's not what Revised Statute 46:2135 says. It says, in part, "The court shall consider any and all past history of abuse or threats thereof, in determining the existence of an immediate [and] present danger of abuse. [There is] no requirement that the abuse itself be recent, immediate[,] or present," so taking that into consideration, the plain language of it, the Court has to be guided by those terms.
>
> If I had by [sic] druthers in this matter, I would issue a 9:372 and 372.1 but that's not what's before me. It may come about in further proceedings because I believe there are other issues in this case that have not yet been litigated but I do find that Ms. LeBouef was placed in a difficult position that had to do with your -- with your addiction at the time, Mr. Aguillard. She was trying to raise these children. I find that from the testimony of Ms. Glasscock that Ms. LeBouef was exhibiting the symptoms of an abusive relationship at that time. The Court also notes that -- and went back and read the excerpts from the diary. I find that the diary is a contemporaneous notation of what occurred during this relationship. In taking the totality of the diary, the

---

[13] Trial on Aguillard's petition for divorce pursuant to La.Civ.Code art. 103(4) was held on July 9, 2019.

> Court finds that there is a probability of abuse and I'm going to grant Ms. Kaitlyn LeBouef a title 46 protective order.

The protective order, signed on July 10, 2019, remains in effect until January 10, 2021.

Aguillard appeals,[14] contending the trial court erred in granting the protective order. He presents the following assignments of error:

> 1. The trial court committed legal error by failing to apply the appropriate legal standard for the issuance of a protective order.

> 2. The trial court committed legal error by granting a Protective Order to LeBouef where there was no immediate need for protection.

> 3. The trial court committed legal error and an abuse of discretion by granting a Protective Order where the petitioner had not met her burden of proof as a matter of law.

## LAW

The Domestic Abuse Assistance Act, La.R.S. 46:2131 to La.R.S. 46:2143, provides protection in the form of TROs and protective orders for persons subject to domestic abuse. This law "provide[s] a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection." La.R.S. 46:2131. Domestic abuse is not limited to physical or sexual abuse, but includes "any offense against the person, physical or non-physical, as defined in the Criminal Code of Louisiana, except negligent injury and defamation, committed by one family member, household member, or dating partner against another." La.R.S. 46:2132(3).[15]

---

[14] We note that in addition to the instant appeal, there is another appeal pending in this case under this court's docket number CA20-064. Therein, Aguillard seeks review of the judgment dated November 15, 2019, whereby the trial court granted LeBouef's petition for divorce pursuant to La.Civ.Code art. 103(5) and granted a non-expiring injunction to LeBouef pursuant to La.R.S. 9:372.1.

[15] The phrase "physical or non-physical" was added to this definition by 2015 La. Acts No. 85, § 1.

14

Louisiana Revised Statutes 46:2135[16] states, in relevant part:

A. Upon good cause shown in an ex parte proceeding, the court may enter a temporary restraining order, without bond, as it deems necessary to protect from abuse the petitioner, any minor children, or any person alleged to be an incompetent. Any person who shows immediate and present danger of abuse shall constitute good cause for purposes of this Subsection. *The court shall consider any and all past history of abuse, or threats thereof, in determining the existence of an immediate and present danger of abuse. There is no requirement that the abuse itself be recent, immediate or present.* The order may include but is not limited to the following:

(1) Directing the defendant to refrain from abusing, harassing, or interfering with the person or employment or going near the residence or place of employment of the petitioner, the minor children, or any person alleged to be incompetent, on whose behalf a petition was filed under this Part.

. . . .

B. If a temporary restraining order is granted without notice, the matter shall be set within twenty-one days for a rule to show cause why the protective order should not be issued, at which time the petitioner must prove the allegations of abuse by a preponderance of the evidence. . . .

Louisiana Revised Statutes 46:2136[17] states, in relevant part:

A. The court may grant any protective order or approve any consent agreement to bring about a cessation of *domestic* abuse *as defined in R.S. 46:2132, or the threat or danger thereof, to* a party, any minor children, or any person alleged to be incompetent, which relief may include but is not limited to:

(1) Granting the relief enumerated in R.S. 46:2135.

## STANDARD OF REVIEW

A trial court is granted wide discretion in the issuance of protective orders. *Ned v. Laliberte*, 18-999 (La.App. 3 Cir. 6/26/19), 277 So.3d 517. A court of appeal reviews the issuance of domestic abuse protective orders for abuse of the trial court's

---

[16] The italicized language was added to La.R.S. 46:2135(A) by 2015 La. Acts No. 85, § 1.

[17] The italicized language was added to La.R.S. 46:2136(A) by 2015 La. Acts No. 85, § 1.

discretion. *Fontenot v. Newcomer*, 10-1530, 10-1531 (La.App. 3 Cir. 5/4/11), 63 So.3d 1149. The trial court's finding of fact, including its assessment of the weight of the evidence, evaluation of the demeanor of the witnesses, and credibility determinations, may not be disturbed on appeal absent manifest error. *Craig v. Bishop*, 19-166 (La.App. 3 Cir. 10/23/19), 283 So.3d 521; *Cummings v. Bishop*, 19-168 (La.App. 3 Cir. 10/23/19), 283 So.3d 507. To reverse the trial court's factual determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes the finding is clearly wrong. *Rabalais v. Nash*, 06-999 (La. 3/9/07), 952 So.2d 653. "Where the [fact-finder's determinations] are reasonable, in light of the record viewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result[.]" *Id.* at 657.

However, "when a trial court applies incorrect legal principles and these errors materially affect the outcome of a case and deprive a party of substantial rights, legal error occurs." *Vidrine v. Vidrine*, 17-722, p. 8 (La.App. 3 Cir. 5/2/18), 245 So.3d 1266, 1274 (citing *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731). When a trial court commits legal error, "the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine from a preponderance of the evidence." *Evans*, 708 So.2d at 735.

## DISCUSSION

The crux of Aguillard's appeal is his argument the trial court legally erred because it applied the wrong legal standard to determine if LeBouef was entitled to a protective order. He argues the allegations which form the basis for an order of protection to be issued must show recent abuse. He contends the trial court

16

erroneously applied the law concerning the issuance of TROs, which does not require the allegations which form the basis for issuance of a TRO to be recent, immediate, or present.

Aguillard asserts the trial court's first legal error is that it did not apply La.R.S. 46:2135(B). In brief, Aguillard submits, "because the trial court did not point to a single allegation as having been proved, it is pure speculation that the trial court found that *any* allegation was proven pursuant to La.R.S. 46:2135(B)."

It is well settled that the trial court's reasons for judgment, oral or written, form no part of the judgment. *Bellard v. Am. Cent. Ins. Co.*, 07-1335 (La. 4/18/08), 980 So.2d 654; La.Code Civ.P. art. 1918. "[A]ppellate courts review judgments, not reasons for judgment." *Bellard*, 980 So.2d at 671. A trial court's reasons for judgment are mere explanations of its determinations which do not alter, amend, or affect the final judgment being appealed. *Wooley v. Lucksinger*, 09-571 (La. 4/1/11), 61 So.3d 507.

Unlike Aguillard, we are mindful that while the trial court's reasons offer insight, we review judgments. We do not interpret the trial court's failure to "point to a single allegation as having been proved" in its oral reasons as conjecture. The obvious implication from the trial court's judgment is that LeBouef proved by a preponderance of the evidence her entitlement to the issuance of a protective order against Aguillard. We review judgments, not reasons for judgment, and the judgment before this court explicitly declares the trial court found LeBouef proved entitlement to a protective order. Consequently, we find this contention is not intrinsically indicative of legal error and is insufficient to provoke de novo review.

The second legal error, Aguillard contends, is the trial court failed to apply La.R.S. 46:2136. In support of this contention, he again points our attention to the trial court's oral reasons, wherein it refers to La.R.S. 46:2135(A). He argues the trial

17

court relied solely on La.R.S. 46:2135(A), not La.R.S. 46:2135(B) and La.R.S. 46:2136, to determine if LeBouef was entitled to a protective order.

Aguillard submits La.R.S. 46:2135(A) applies only to temporary restraining orders; La.R.S. 46:2135(B) and (D) apply to protective orders, requiring a petitioner to prove the allegations of domestic abuse by a preponderance of the evidence; and La.R.S. 46:2136 applies to protective orders, which he argues requires a petitioner to prove recent abuse. He expounds that La.R.S. 46:2135(A) addresses the standard for the issuance of a TRO and what evidence may be considered to constitute an "immediate and present danger of abuse" in connection therewith. Aguillard stresses La.R.S. 46:2135(A) was amended in 2015 to add, "The court shall consider any and all past history of abuse, or threats thereof, in determining the existence of an immediate and present danger of abuse. There is no requirement that the abuse itself be recent, immediate or present." He further underscores that same language was not added to La.R.S. 46:2136. In brief, Aguillard argues without citation to any supportive authority, "the Legislature intended to afford courts the broad discretion to consider all facts, regardless of the time of occurrence, in deciding whether to issue a temporary restraining order under La.R.S. 46:2135(A)."

It is Aguillard's contention that the phrase "to bring about a cessation of domestic abuse" found in La.R.S. 46:2136(A) requires a petitioner seeking a protective order demonstrate a present need for protection, i.e., recent abuse. Citing this court's decision in *Fontenot*, 63 So.3d 1149, Aguillard submits in brief "[c]urrent, controlling jurisprudence has consistently interpreted the language of La.R.S. 46:2136 to impose a burden on the petitioner to show an immediate or present need for protection in order for a protective order to issue." Thus, he argues the trial court legally erred in granting the protective order because LeBouef did not show any recent abuse.

18

Aguillard contends the trial court's decision should be reversed for legal error. He urges this court to forego the customary standard of review for abuse of discretion and, instead, review this matter de novo on the basis of the trial court's alleged failure to apply the appropriate legal standard for the issuance of a protective order. We find Aguillard's contentions untenable.

"The purpose behind the entire legislative scheme in [La.R.S. 46:2131 to La.R.S. 46:2143] is to provide relief to victims of domestic violence by establishing 'a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection.'" *Bettevy v. Bettevy*, 19-327, p. 4 (La.App. 3 Cir. 11/6/19), 283 So.3d 1047, 1050 (quoting *Fontenot*, 63 So.3d at 1151). This court recently examined how La.R.S. 46:2135 and La.R.S. 46:2136 affect the proceeding for a protective order in *Bettevy*, 283 So.3d at 1049-50 (emphasis added):

> Pursuant to La.R.S. 46:2135(B), the allegations of abuse entitling a person to a protective order must be established by a preponderance of evidence. In issuing the temporary order of protection, for good cause shown, the trial court must consider "any and all past history of abuse, or threats thereof, in determining the existence of an immediate and present danger of abuse." La.R.S. 46:2135(A). "There is no requirement that the abuse itself be recent, immediate, or present." *Id.*
>
> It has been held that "good cause shown" applies to both the temporary restraining order and the other protective orders. *Dvilansky v. Correu*, 16-279 (La.App. 4 Cir. 10/26/16), 204 So.3d 686, *writ denied*, 16-2081 (La. 1/9/17), 214 So.3d 871; *S.L.B. v. C.E.B.*, 17-978, 17-979, 17-980 (La.App. 4 Cir. 7/27/18), 252 So.3d 950, *writ denied*, 18-1442 (La. 11/20/18), 256 So.3d 992.
>
> . . . .
>
> *Therefore, it follows that all history of abuse or threats, past and present, must be considered in proving the allegations of abuse and entitlement to a protective order. La.R.S. 46:2135(B).*

Thus, La.R.S. 46:2135 and La.R.S. 46:2136 should be read in pari materia. As such, we do not agree with Aguillard's contention the trial court can consider past abuse only for issuance of a TRO under La.R.S. 46:2135(A), and recent abuse must be

proved for issuance of a protective order under La.R.S. 46:2136(A). We further note Aguillard's dissection of La.R.S. 46:2136(A) ignores the phrase "or the threat or danger thereof." Construing La.R.S. 46:2135 and La.R.S. 46:2136 together, the trial court has vast discretion to consider "all history of abuse or threats, past and present," in determining whether to issue an order of protection. *Bettevy*, 283 So.3d at 1049. Consequently, we find no merit in Aguillard's second assignment of error.

In his final assignment of error, Aguillard contends the trial court both legally erred and abused its discretion when it did not require LeBouef to meet her burden of proving sufficient grounds for issuance of a protective order. He alleges LeBouef's testimony was incredible, Ms. Glasscock's opinion was flawed, and the trial court erred in admitting and relying on a journal which he alleges LeBouef fabricated.

We note that the charges set forth in LeBouef's petition for protection are similar to those memorialized in LeBouef's journal. Though Aguillard alleges he was ignorant of the existence of the journal until days before the trial, the details in LeBouef's petition put Aguillard on notice as to what LeBouef was alleging. Even without Aguillard's waiver, the trial court did not err in admitting LeBouef's journal and considering it supportive evidence to LeBouef's testimony, bolstering her credibility.

In light of our review of the record, we cannot say that the trial court abused its vast discretion in granting LeBouef's request for a protective order. We do not find manifest error in the trial court's assessment of the weight of the evidence, evaluations of the witnesses' demeanor, and credibility determinations. *Craig*, 283 So.3d 521; *Cummings*, 283 So.3d 507. We find a reasonable factual basis exists for the finding of the trial court that LeBouef's charges of physical, sexual, and psychological abuse by Aguillard are credible. Ms. Glasscock's testimony and

20

professional opinion are also particularly significant and supportive of LeBouef's allegations. Consequently, we find a reasonable factual basis exists for the finding of the trial court, and the record establishes the trial court's finding is not clearly wrong. *Rabalais*, 952 So.2d 653.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this matter are assessed to Defendant/Appellant, Caleb K. Aguillard.

**AFFIRMED.**