# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 CA 0723

JOHN DOE

VERSUS

DYNAMIC PHYSICAL THERAPY, LLC
AND SCOTT NEWTON

Judgment Rendered: DEC 2 7 2024

* * * * * *

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2021-15372

Honorable Allan A. Zaunbrecher, Judge Presiding

* * * * * *

Joshua L. Holmes
Todd A. Hebert
Melanie E. Addy
New Orleans, Louisiana

Counsel for Plaintiff/Appellant
John Doe

Guice A. Giambrone, III
Ivana Dillas
A. Rebecca Wilmore
Metairie, Louisiana

Counsel for Defendants/Appellees
Dynamic Physical Therapy and
Scott Newton

* * * * * *

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

**McCLENDON, J.**

In this case, the plaintiff appeals a judgment of the trial court that sustained the defendants' peremptory exception raising the objection of no cause of action. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 20, 2021, John Doe[1] filed a Verified Petition for Damages against Dynamic Physical Therapy, LLC (Dynamic) and Scott Newton, a physical therapist and employee at Dynamic. Therein, Mr. Doe alleged that because of his ongoing back pain, he went to see Dr. Steven C. Lee, an interventional pain management specialist, and Dr. Lee referred Mr. Doe to Mr. Newton at Dynamic for heated aquatic physical therapy. Mr. Doe further asserted that on December 30, 2020, he met with Mr. Newton at Dynamic and that Mr. Newton scheduled two follow-up aquatic physical therapy appointments; however, the following morning, Mr. Doe received a telephone call from Mr. Newton informing him that due to his HIV-positive status, Dynamic was denying him aquatic therapy. Mr. Doe alleged that despite HIV's relevance as a contraindication for aquatic therapy, it is only so contraindicated in the limited circumstance where the patient is otherwise seriously immunocompromised. Mr. Doe asserted that he was neither asked about nor examined for any other medical condition that might serve as a contraindication.[2] As a result, Mr. Doe alleged that the defendants' actions caused severe emotional distress and the continuation of a significant amount of pain. Specifically, Mr. Doe averred that the defendants discriminated against and intentionally inflicted emotional distress upon him because of his HIV-positive disability status, causing him serious, permanent, and irreversible damages.

In conjunction with the filing of his petition, Mr. Doe filed an Ex Parte Motion for Protective Order and to Seal Affidavits and Verification Revealing Plaintiff's Identity.[3] On January 3, 2022, the trial court signed a protective order decreeing that the defendants

---

[1] John Doe is a pseudonym used by the plaintiff when he filed suit to protect his identity due to the sensitive nature of his HIV status.

[2] Mr. Doe also alleged that Mr. Newton stated that Mr. Doe was more than welcome to come in for regular physical therapy, which Mr. Doe declined.

[3] Also, in conjunction with the filing of his petition, Mr. Doe filed a Motion to Proceed in Forma Pauperis, which was granted.

shall not disclose the plaintiff's real name or identity and that all references to the plaintiff shall be by the name of John Doe. The trial court further ordered that the affidavits and verification revealing the plaintiff's true identity be sealed.[4]

The defendants filed an answer, generally denying the allegations of Mr. Doe's petition. The defendants further answered, alleging, *inter alia*, that their actions, inactions, and decisions regarding the therapy offered to Mr. Doe were at all times treatment based; that Mr. Doe's petition supported the conclusion that the defendants did not discriminate against Mr. Doe or subject him to an intentional tort; that they acted at all times in good faith based on legitimate, non-discriminatory reasons; that they did not act with malice or reckless indifference; and that they did not deprive Mr. Doe of any federally protected rights.

Thereafter, the defendants filed a Peremptory Exception of No Cause of Action. In their exception, the defendants contended that during the public health emergency in connection with the COVID-19 pandemic, the Louisiana Health Emergency Powers Act (LHEPA) was applicable and barred any claims against the defendants. The defendants alleged that Mr. Doe failed to state an actionable cause of action, as the complained of conduct concerned the defendants acting within the course and scope of their employment as health care providers during the pandemic. The defendants particularly asserted that the allegations of the petition failed to specifically plead or allege sufficient facts that the defendants acted grossly negligent or committed an intentional tort.

Mr. Doe opposed the exception, and the defendants filed a reply memorandum to Mr. Doe's opposition. Following a hearing on September 21, 2023, the trial court rendered judgment in open court sustaining the defendants' peremptory exception raising the objection of no cause of action; however, the trial court granted Mr. Doe twenty days to amend his petition. On October 10, 2023, the trial court signed a judgment in conformity with its ruling.

Shortly thereafter, on October 11, 2023, Mr. Doe filed an Ex Parte Motion for Leave to Amend, which was granted. Mr. Doe's original nineteen-paragraph petition became

---

[4] The protective order was later amended by consent judgment to allow the disclosure of the plaintiff's name and identity in the limited context of providing his medical records and any related disclosure forms to any potential or retained medical expert consultants and their professional staff.

3

sixty-seven paragraphs. In response to Mr. Doe's First Supplemental and Amended Petition for Damages, the defendants filed a second Peremptory Exception of No Cause of Action. Therein, the defendants again alleged that Mr. Doe failed to allege sufficient facts of gross negligence and willful misconduct. Mr. Doe opposed the peremptory exception.

The matter was set for hearing on March 14, 2024. After argument by the parties, the trial court sustained the peremptory exception raising the objection of no cause of action and dismissed, with prejudice, all allegations made against the defendants. The trial court signed a judgment on April 4, 2024, and Mr. Doe appealed.

Mr. Doe has raised three assignments of error, alleging that the trial court erred in: 1) finding that Mr. Doe's petition stated no cause of action when he clearly alleged that the defendants violated the Americans with Disabilities Act and the Rehabilitation Act of 1973; 2) applying the Louisiana Health Emergency Powers Act to the intentional conduct Mr. Doe alleged against the defendants; and 3) refusing to find that Mr. Doe's petition sufficiently pleaded the elements for an intentional infliction of emotional distress claim.

## NO CAUSE OF ACTION

As used in the context of the peremptory exception, a cause of action refers to the operative facts that give rise to a plaintiff's right to judicially assert an action against a defendant. **Benoist v. Jackson National Life Insurance Company**, 2022-0878 (La.App. 1 Cir. 4/14/23), 364 So.3d 1162, 1165. The peremptory exception raising the objection of no cause of action is used to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. **Id**. The purpose of the exception of no cause of action is not to determine whether the plaintiff will ultimately prevail at trial, but to only ascertain if a cause of action exists. **Benoist**, 364 So.3d 1165-66. No evidence may be introduced to support or controvert the exception of no cause of action. LSA-C.C.P. art. 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. The issue at the trial of

4

the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Benoist**, 364 So.3d 1166.

In reading a petition to determine whether a cause of action has been stated, it must be interpreted, if possible, to maintain the cause of action instead of dismissing the petition. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding a cause of action has been stated. **Christian Schools, Inc. v. Louisiana High School Athletic Association**, 2020-0762 (La.App. 1 Cir. 5/18/22), 342 So.3d 1068, 1074, writ denied, 2022-01015 (La. 10/12/22), 348 So.3d 78. However, the petition must set forth material facts upon which the cause of action is based. LSA-C.C.P. art. 891(A); **Christian Schools, Inc.**, 342 So.3d at 1074. The correctness of conclusions of law is not conceded for the purposes of a ruling on an exception raising the objection of no cause of action. **Christian Schools, Inc.**, 342 So.3d at 1075.

The burden of demonstrating that a petition fails to state a cause of action is on the mover. **Benoist**, 364 So.3d 1166. Because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition, a judgment sustaining a peremptory exception raising the objection of no cause of action is reviewed by an appellate court *de novo.* **Id**.

## DISCUSSION

In his appeal, Mr. Doe asserts that he was discriminated against by the defendants due to his HIV status, a legally recognized disability. He contends that, although HIV is a contraindication for aquatic therapy, the defendants did not make further inquiries about Mr. Doe's HIV status or his CD4 count prior to cancelling the aquatic therapy.[5] Mr. Doe asserted that the defendants' denial of his access to the pool and aquatic therapy "simply because he is HIV positive is an intentional act" and violated the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act (Rehabilitation Act), and Louisiana's Commission on Human Rights Act (LCHRA). Thus, as alleged by Mr. Doe, the defendants violated state and federal laws when they willfully discriminated against him, refused him care, and treated him differently from other customers.

---

[5] In his petition, Mr. Doe alleged that CD4 cells are a white blood cell type that helps the body fight infection and that the number of CD4 cells in a person's body is measured using a CD4 count test.

5

To the contrary, the defendants assert that Mr. Doe's complained-of conduct concerns health care providers acting within the course and scope of their employment during the COVID-19 pandemic and thus falls within the protection of LHEPA. Therefore, according to the defendants, because the petition for damages, as amended, did not specifically plead or allege sufficient facts of gross negligence or willful misconduct, the law does not afford a remedy to Mr. Doe.

We first address Mr. Doe's argument as to the applicability of the LHEPA. In his second assignment of error, Mr. Doe asserts that the trial court erred in finding that the LHEPA was applicable, as he sufficiently alleged in his petition intentional conduct by the defendants. Related to this argument is Mr. Doe's third assignment of error, wherein he contends that the trial court erred in refusing to find that his petition sufficiently pleaded the elements for an intentional infliction of emotional distress claim such that the immunity provided by LHEPA does not apply.

In 2003, the legislature enacted a comprehensive revision of the Louisiana Homeland Security and Emergency Assistance and Disaster Act of 1993. This revised set of statutes was entitled the Louisiana Health Emergency Powers Act (LHEPA). LSA-R.S. 29:760 *et seq.* **Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC**, 2023-00483 (La. 10/20/23), 379 So.3d 615, 621. The purpose of the LHEPA is to protect the health and safety of the citizens of Louisiana by allowing the state to have "the ability to respond, rapidly and effectively, to potential or actual public health emergencies." LSA-R.S. 29:761(A); **Welch v. United Medical Healthwest-New Orleans, L.L.C.**, 24-65 (La.App. 5 Cir. 6/13/24), 391 So.3d 123, 127. Pursuant to LSA-R.S. 29:766(A), "[a] state of public health emergency may be declared by executive order or proclamation of the governor, following consultation with the public health authority, if he finds a public health emergency as defined in LSA-R.S. 29:762 has occurred or the threat thereof is imminent."

On March 11, 2020, Governor Jon Bel Edwards declared a state of public health emergency in Louisiana in accordance with the LHEPA due to the COVID-19 pandemic. **Sebble**, 379 So.3d at 617 n.2; **Welch**, 391 So.3d at 128. The public health emergency was extended through March 16, 2022. **Welch**, 391 So.3d at 128.

6

Included in the LHEPA, and particularly pertinent herein, is LSA-R.S. 29:771(B)(2)(c)(i), which provides that "[d]uring a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct." "Health care providers" are defined in the LHEPA as "a clinic, person, corporation, facility, or institution which provides health care or professional services by a physician, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, psychologist, or psychiatrist, and any officer, employee, or agent thereof acting in the course and scope of his service or employment." LSA-R.S. 29:762(4). Therefore, because the denial of the aquatic physical therapy by health care providers occurred in December of 2020, which was during the declared public health emergency due to the pandemic, the heightened burden of proof against private health care providers set forth in LSA-R.S. 29:771(B)(2)(c)(i) was in effect. See **Morrow v. Louisiana Medical Mutual Insurance Company**, 2022-1006 (La.App. 1 Cir. 2/24/23), 361 So.3d 986, 989.

The LHEPA is a statute that, by its clear terms, applies in civil proceedings seeking to impose civil liability. LSA-R.S. 29:771(B)(2)(c)(i); **Sebble**, 379 So.3d at 623. It is an immunity statute.[6] **Sebble**, 379 So.3d at 624.

---

[6] We note that the defendants did not specifically raise the affirmative defense of immunity in their answer to the original petition for damages. Louisiana Code of Civil Procedure Article 1005, entitled "Affirmative defenses", provides:

> The answer shall set forth affirmatively negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as a peremptory exception or as an incidental demand, or a peremptory exception as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.

In **Sebble**, the supreme court recognized that while tort immunity is not specifically enumerated as an affirmative defense in LSA-C.C.P. art. 1005, it was well settled that the list therein is illustrative, not exclusive. **Sebble**, 379 So.2d at 624-25, citing **Walls v. American Optical Corp.**, 98-455 (La. 9/8/99), 740 So.2d 1262, 1267. The court then stated that since statutory immunity is an affirmative defense, it may only be raised in an answer filed in a civil proceeding. **Sebble**, 379 So.3d at 625. The supreme court found that it was procedurally improper to inject the affirmative defense of statutory immunity pursuant to the LHEPA into medical review proceedings, as a medical review panel is not an adjudicatory body and the LHEPA had no application in the medical review process. **Sebble**, 379 So.3d at 623, 625.

However, the supreme court, in a footnote, cited to **Brown v. Adair**, 2002-2028 (La. 4/9/03), 846 So.2d 687, 690 (a workers' compensation matter wherein the supreme court opined that "the tort immunity provided by the Act operates as an affirmative defense" and **Welch v. United Med. Healthwest-New Orleans, L.L.C.**, 21-684 (La.App. 5 Cir. 8/24/22), 348 So.3d 216, 221-22 ("We find that the tort immunity provided by Section 29:771(B)(2)(c) of LHEPA, 'mistakenly' pled by Appellees as a peremptory exception of no cause of action, is, in fact, an affirmative defense which the trial court considered properly pled, pursuant to La. C.C.P. art. 1005."). **Sebble**, 379 So.3d at 625 n.6.

In his petition, Mr. Doe alleged that the defendants are health care providers who provided medical treatment to him during the pandemic. This is undisputed. Mr. Doe acknowledged that Mr. Newton was an employee of Dynamic "and was acting at all times within the course and scope of his employment." Thus, because the defendants were health care providers who provided medical treatment for Mr. Doe during the public health emergency, the provisions of LSA-R.S. 29:771(B)(2)(c)(i) are applicable herein. Nevertheless, Mr. Doe argues that he sufficiently alleged that the defendants acted with intentional conduct such that the defendants conduct fit within the exception of "willful misconduct," and the provisions of the LHEPA are inapplicable to him.

In his petition, as amended, Mr. Doe averred that the defendants "discriminated against and intentionally inflicted emotional distress" upon him based on his HIV status. Mr. Doe also asserted that the defendants never presented him with any information or documentation to show that receiving aquatic therapy posed a direct threat to others' health or safety and that the threat could not be eliminated by reasonable modifications to the aquatic therapy policies or practices; that, instead, the defendants had Mr. Doe sign a form, confirming that he did not have any of the listed contraindications "or other communicable diseases," as HIV and AIDS were not listed on the form; that having Mr. Doe sign a contraindication acknowledgement form violated the ADA, the Rehabilitation Act and the LCHRA; that Mr. Doe has been under a physician's care for his HIV status, with regular CD4 count and viral load[7] testing, which were available to any of Mr. Doe's medical providers who requested the results; and that the defendants should have requested the testing results, but failed to do so. Additionally, Mr. Doe alleged:

36.

[The defendants] denying Mr. Doe access to the pool and aquatherapy simply because he is HIV positive is an intentional act in that they consciously denied him access based solely on his being HIV positive and no other medical information about him, his condition, CD4 or Viral Load, or the scientific evidence about HIV. This decision was intentional

---

Herein, the defendants raised the affirmative defense of statutory immunity in both peremptory exceptions raising the objection of no cause of action. Accordingly, as this matter is a civil proceeding, we likewise find that the tort immunity provided by LSA-R.S. 29:771(B)(2)(c)(i), "mistakenly" pled by the defendants as a peremptory exception raising the objection of no cause of action is, in fact, an affirmative defense which the trial court considered properly pled, pursuant to LSA-C.C.P. art. 1005.

[7] Mr. Doe alleged that viral load is the amount of HIV virus in a person's blood; that it is measured using a viral load test; and that a viral load less than 200 copies/ml means the HIV transmission risk is zero.

8

because it was based on Mr. Doe's HIV status, which is a protected characteristic under the ADA, [the Rehabilitation Act] and LCHRA.

* * *

39.

Once someone knows that another person is HIV positive, they have a choice about whether or not to deny them access to a pool, or aquatherapy. If they choose to deny them access, they are intentionally discriminating against them on the basis of their HIV status.

40.

[The defendants] chose to deny Mr. Doe access to aquatherapy, intentionally discriminating against him based on his HIV status.

* * *

48.

Because [the defendants] knew or should have known they were subject to the ADA, [the Rehabilitation Act] and LCHRA and knowingly violated those acts, they acted with willful misconduct.

Mr. Doe concluded that he was discriminated against and that the defendants intentionally inflicted emotional distress because of his disability, i.e., his HIV-positive status, for the following reasons:

1. Intentionally disregarding preventative measures, such as asking to ensure Mr. Doe had a sufficient CD4 count that would have allowed Mr. Doe the same access to aquatic therapy as that provided to non-HIV-positive members of the public;

2. Intentionally misrepresenting the science of HIV such that Mr. Doe's sense of shame, humiliation, and stigma around his HIV status was increased;

3. Intentionally mistreating a patient;

4. Directly discriminating against Mr. Doe based solely on his HIV-positive status;

5. Refusing to provide treatment based solely on HIV status;

6. Intentionally failing to act in a professional manner; and

7. Any and all other acts or omission or commission, which may be proven at the time of trial.

As previously stated, no health care provider shall be civilly liable for causing injury during a public health emergency "except in the event of gross negligence or willful misconduct." See LSA-R.S. 29:771(B)(2)(c)(i). Mr. Doe contends that he sufficiently alleged that the defendants' willful and intentional choices caused him significant harm. In **Bazley v. Tortorich**, 397 So. 2d 475 (La. 1981), the supreme court explained that

9

an intentional tort requires that the provider either: (1) consciously desires the physical result of his act; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. **Bazley**, 397 So.2d at 481. However, something more than a conclusory allegation of intentional conduct is required. The mere invocation of the word "intentional" will not create a cause of action. **Morrow**, 361 So.3d at 990.

More recently, in **McQuirter v. State Through Louisiana Department of Public Safety and Corrections Elayn Hunt Correctional Center**, 2020-01192 (La. 1/12/21), 308 So.3d 285, the Louisiana Supreme Court explained that the terms "willful", "wanton", and "reckless" have been applied to that degree of fault which lies between intent to do wrong and the mere reasonable risk of harm involved in ordinary negligence. The supreme court stated that these terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. **Id**. "Only the most egregious conduct ... that exhibits an active desire to cause harm, or a callous indifference to the risk of potential harm from flagrantly bad conduct, will rise to the level of willful misconduct." **McQuirter**, 308 So.3d at 285-86. See also **Noyel v. City of St. Gabriel**, 2015-1890 (La.App. 1 Cir. 9/1/16), 202 So.3d 1139, 1145, writ denied, 2016-1745 (La. 11/29/16), 213 So.3d 392 (where "willful misconduct" has been described as some voluntary, intentional breach of duty - which may be unlawful, dishonest, or improper - that is committed with bad intent or, at best, with wanton disregard for the consequences).

Further, "gross negligence" has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." **Rabalais v. Nash**, 2006-0999 (La. 3/9/07), 952 So.2d 653, 658. Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." **Id**. Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." There is often no clear distinction between such

10

willful, wanton, or reckless conduct and gross negligence, and the two have tended to merge and take on the same meaning. **Id**.

Notably absent from Mr. Doe's petition are any factual allegations of any particular conduct by the defendants that would constitute "the most egregious conduct" exhibiting "an active desire to cause harm, or a callous indifference to the risk of potential harm from flagrantly bad conduct." Rather, as fully detailed above, Mr. Doe merely alleged that the defendants denied him access to aquatic physical therapy and failed to ascertain Mr. Doe's current HIV status. These conclusory allegations of intentional conduct are based on general factual allegations that sound in ordinary negligence. See **Harrell v. State Through Department of Transportation and Development**, 2022-0126 (La.App. 1 Cir. 9/16/22), 2022 WL 4286558, *6-7 (unpublished).

Moreover, the conclusory allegations in the petition do not contain specific facts sufficient to establish that the defendants consciously desired the physical result of their acts or knew that the result was substantially certain to follow from their conduct. See **Bazley**, 397 So. 2d at 481. Although Mr. Doe alleges in his brief that he was singled out and refused aquatic physical therapy based on his positive HIV status and refused clarity regarding Dynamic's policy regarding aquatic physical therapy, Mr. Doe failed to allege any facts to support these claims. He further contends that discrimination by its very nature is a willful act. However, even if his allegations are accepted as true, Mr. Doe has not alleged facts that tend to show that the defendants engaged in conduct that was egregious or comes close to the level of an extreme departure from ordinary care or is conduct that constitutes gross negligence or willful misconduct. These assignments of error are without merit.

Mr. Doe also contends that the trial court erred in finding that his petition failed to state a cause of action when he clearly alleged that the defendants violated the ADA and the Rehabilitation Act. Specifically, Mr. Doe argues that the federal laws supersede and preempt any state law and that because he sufficiently alleged that the defendants intentionally discriminated against him because of his HIV status, he has asserted valid causes of action. However, Mr. Doe again only makes conclusory allegations without supporting facts and cites no legal authority supporting this argument. Louisiana Revised

11

Statutes 29:771(B)(2)(c)(i) contains no limitation on its application during a public health emergency. Rather, according to its plain language, the statute applies to all persons who suffer injury or death caused by a health care provider "except in the event of gross negligence or willful misconduct."[8] We have already found that the allegations in Mr. Doe's petition, even as amended, do not rise to the level of gross negligence or willful misconduct, and this assignment of error also lacks merit.

Therefore, we find that the trial court correctly recognized that the LHEPA is applicable to the matter before us. Accordingly, given the clear and unambiguous language of LSA-R.S. 29:771(B)(2)(c)(i), the trial court did not err in sustaining the peremptory exception raising the objection of no cause of action.

## CONCLUSION

Considering the above, we affirm the April 4, 2024 judgment of the trial court, sustaining the peremptory exception raising the objection of no cause of action and dismissing the plaintiff's suit with prejudice. All costs of this appeal are assed to the plaintiff, John Doe.

**AFFIRMED.**

---

[8] Further, in LSA-R.S. 29:761(B) the legislature declared that the purpose of the LHEPA and the policy of the State of Louisiana is that all health emergency powers of the state be coordinated to the maximum extent possible with the comparable functions of the federal government.